I'll be reserving two minutes of rebuttal time. May it please the Court, my name is Joshua Bargavid, attorney for Petitioner Mrs. Chen. Mrs. Chen is entitled to have and have adjudicated a successive asylum application based upon changed personal circumstances. The statute and the regulations do not require a motion to reopen. In fact, the Department of Justice explicitly dropped the requirement that a motion to reopen be submitted in order to pursue relief based upon changed personal circumstances. Counsel, would you address directly the fact that the BIA recently issued a precedential opinion disagreeing with your position and also that the Seventh Circuit interpreting the statute as well has come to an opposite conclusion? Yes, Your Honor. The decision that I believe you're referring to is a matter of CWL, which was, I believe, November 1st or October 30th when the decision was handed down. And, in fact, we would assert that that decision is entitled to no legal effect or, at the very least, no deference by this Court. And I would cite for the Court Sprint Court v. FCC 315 F3rd 369. And in that decision, the Circuit Court for the District of Columbia stated that new rules that work substantive changes in prior regulations that had been adopted through the notice and comment hearings require new notice and comment hearings in order to change those rules. Well, their position is there is no change. They're explaining what the existing law is, and that was the Seventh Circuit's position as well, that there was a statutory ambiguity and a certain result flowed from that. And we would respectfully assert that if this Court, and we hope this Court does, come to the conclusion that, in fact, it is a change, that, in fact, there was notice and comment hearings, there was the explicit dropping of the requirement that a motion to reopen be submitted. Therefore, that was part of the notice and comment hearings to remove that requirement. And the Board's decision, the Board's most recent decision, is working substantive effects, substantive changes to that requirement. And so long as this Court reaches that determination, reaches the conclusion that the Board's recent decision is a change to a prior requirement, then Chevron deference does not apply. In fact, no, the Board's decision would have no legal effect because under the requirement as enunciated by the D.C. Circuit, in fact, there is no new notice and comment hearings would be required. I did look for we, in fact, did submit this in our most recent 28-J letter, but it probably has not reached the panel yet. It was mailed out on Monday overnight, so it may not have reached the panel. But we did address this with the citations in reply to the government's 28-J letter bringing this new authority to the Court's attention. And with respect to the Seventh Circuit, we would, while certainly it is on point on this issue, we would just respectfully assert that the Seventh Circuit was incorrect in their reading of the statute. In fact, the Board is attempting to draw a distinction in the statute, that there is a distinction between those who have an asylum application denied, which is not yet ripened into a final order, meaning it's on appeal to the Board of Immigration Appeals, and those who have a final order of removal. Yet the statute makes no distinction. And it's a well-established principle of statutory interpretation that where there is no distinction, the Court should not read one into it. And in fact, even more importantly, we would note that the Board's reading is superfluous, that an applicant whose asylum application has been denied but it has not yet ripened into a final order would not need to benefit from 1158A2D. In fact, the regulations already provide a remedy for changed personal circumstances through a motion to remand, that's 8 CFR 1003.3, provides that new and previously unavailable evidence while the case is on appeal may be submitted in conjunction with a motion to remand for consideration before the immigration judge. That regulation does not provide for any distinction between changed personal circumstances or changed country conditions. It just says new and previously unavailable evidence. So an applicant would not need 1158A2D. The Board's reading of this distinction stating that 1158A2D is applicable for those situations is simply creating a reading in the statute that makes no sense. The only time 1158A2D is really relevant and the only time that it could possibly have been envisioned is where an individual has a final order of removal and they're seeking to have this new and previously unavailable evidence considered. In addition, we would also note that the Board seems to be requiring that there always seems to be indicating that a motion to reopen is always required after the final order of removal has been issued, except there's no such requirement in the statute. The motion to reopen requirements only lay out when submitting a motion to reopen what must be met. But there is no requirement that in every instance a motion to reopen would be required. And, in fact, there are plenty of situations where an individual can have new and previously unavailable evidence considered. For example, in a situation where an individual becomes eligible to adjust their status I believe it's the First Circuit's case of Sukkar, a person can adjust their status with a final order of removal not having to reopen their prior order of removal. And, in fact, the regulations that outline the jurisdiction seem to indicate that a motion to reopen is not always required. That's 8 CFR 208.4 and 208.4B2I. And that states that who has jurisdiction to decide successive asylum applications. And if I can quote from it, they say, After the completion of removal proceedings, final order of removal, an asylum application shall be made with the immigration court having jurisdiction over the prior proceedings and in conjunction with the motion to reopen where applicable. Those are the key words. They're where applicable. That obviously indicates that there are certain situations where a motion to reopen is not required. And under 1158.82d, changed personal circumstances, the Department of Justice explicitly stated that a motion to reopen is not required. Therefore, the board's most recent decision works a change in that, and new notice and comment hearings would be required before the board's decision could have any legal effect. Unless the Court has any further questions, I'll reserve the remaining time for rebuttal. You're welcome to do that. We'll hear from Antumay on behalf of the government. May it please the Court. My name is Anne Tumay. I represent the United States Attorney General. In considering Petitioner's claims, the Court should keep in mind a couple of things. One, Petitioner's removal order became final in 2000, and then she filed two motions to reopen and a motion to reconsider, and she did not seek review of any of these. She also became a fugitive from justice at one point while filing these claims but didn't do anything. What she did do was to file another motion seeking to submit a successive asylum application. The Court should note that there's nothing in the record that indicates that she previously filed an asylum application that was denied by the court or the immigration court. In any event, the question before the Court presented by this matter is whether Petitioner may circumvent the statutory and regulatory requirements for reopening by filing a purported successive asylum application. The board concluded that the answer is no. Its decision and interpretation, particularly in light of matter of CWL, is reasonable, consistent with the statute, and is entitled to deference. The question is not so much whether Petitioner's interpretation of the statute is better or more reasonable. It's rather whether the board's interpretation is reasonable. And here we submit that it is. In fact, it makes more sense the way the board has construed the statute. Here Petitioner suggests that there is some sort of conflict where there exists none. In applying traditional tools of statutory construction, we have to look at the plain language of the statute. Well, if we consider the board's interpretation, then we give meaning both to the reopening statute that governs where there is a final order removal, as well as the asylum statute. The two provisions are separate. Asylum requires that the Petitioner or the applicant file within one year or qualify for an exception. The reopening statute governs when there is a final order of removal and there are separate filing requirements and deadlines for reopening. In looking at the statutory provisions, the board gave meaning to both the statutory language as well as the regulations implementing them. There is no conflict. And they also harmonized, to the extent that there is any issue, they harmonized those statutory provisions. That is also consistent with the requirements for interpreting a statute. If we accept Petitioner's interpretation, we have to reject or at least look to the reopening requirements as being superfluous. What happens when we have a final removal order and an applicant that is seeking to reopen those proceedings? If we consider Petitioner's claims, there is no language that implements the availability of seeking to apply for a successive asylum application without anything else, simply by filing a motion. That doesn't happen when there is a final removal order. The board's interpretation recognizes that there are separate provisions dealing with an alien who has a final removal order. And those requirements state that one must first file it within the 90-day deadline. If it's not, then the Petitioner has to comport with certain exceptions. Those exceptions do not take into account the exceptions or the changed circumstances that are recognized under the asylum statute at 2008A2D. Those are completely separate provisions, and the board read it as such. The board's interpretation is reasonable. The Act is at the plain language of the Act provides for two separate provisions. And as the board stated in Matter CWL, in order to affect meaning to both of these then we have to require that aliens who have a final removal order must first comport with the reopening requirements. If this Court were to embrace the construction of Petitioner, the Court would first have to ignore the plain meaning of both those provisions, particularly the reopening statute. It would also have to reject the analysis of the board in Matter CWL and in Chen, which is the only case that addresses the interplay of the reopening statute and the asylum statute filing requirements. The Court would also have to negate the reopening statute and then come up with some sort of jurisdictional basis for the agency to consider motions for successive asylum applications. If there had been no removal proceedings and there was an attempt to file an out-of-time asylum application on the ground of changed circumstances, how would it be done? Your Honor, I'm not sure I understand the question. If there were no removal proceedings, then the Petitioner would first file an application directly with the Secretary of Homeland Security. Okay. And then when removal proceedings are pending, the statute presumably provides they have to be done through the – in the removal proceedings. Yes, Your Honor, in the immigration court. And then the defense of asylum application. But I suppose it – I mean, it's not inconceivable that when the removal proceedings are concluded that you can just go back and file the way you would have otherwise, is it? Your Honor, once the removal proceedings are concluded, then Petitioner could apply directly with the Secretary of Homeland Security. However, the provisions also, as Congress had delegated the authority to the Attorney General, the implementing regulations provide that it's up to the agency as well as the Secretary of Homeland Security. So Petitioner could apply directly to the Secretary of Homeland Security. However, in enacting the authority to prosecute the Petitioner, the Secretary of Homeland Security specifically placed the person in removal proceedings, such that the likelihood of the application being considered again or rejected is higher. In any event, it's a long response to Your Honor's question, but the Petitioner could try to reply with the Secretary of Homeland Security, but the likelihood of it being accepted is dependent upon the Secretary and the agency. That's ultimately going to be true in any asylum application. Well, I suppose it's not the Secretary, is it? Who exercises the ultimate discretion on asylum anyway? Your Honor, it would be the Attorney General. And the Attorney General can delegate that to both the agency in the context of the board or in the context of the Department of Homeland Security. And in most instances where there is a removal order already in place, then the regulations state specifically that jurisdiction-wise, not with DHS, but rather with the last adjudicative administrative body that considered it. It seems if we accept the position of the government here, it means that some people just can't file this late application for asylum, even though there are changed circumstances because they're somehow timed out or numbered out of a rehearing before the board. Your Honor? Does it frustrate the statute? No, Your Honor, because the statute also allows for some aliens to apply for asylum if there are changed country conditions. They first have to meet the requirements. Well, no, I understand that. It's limited to country conditions or conditions in the country to which they're being removed, I guess. Yes, Your Honor. And that is up to the discretion of Congress. And Congress has specified that they only wish to allow for those aliens who have a final removal order to raise new claims if they satisfy the reopening statute. And that is consistent with congressional intent not only to expedite the removal of aliens who have violated the immigration laws, but to prevent any kind of abuse of the reopening statute. And as this Court and the Supreme Court have recognized, then there unfortunately is the occurrence of such an abuse. So in order to balance that, Congress has established these provisions which allow for an alien who has a final removal order to reopen, but only under the requirements when they satisfy the requirements of reopening. Here we have a question simply of whether the Board's interpretation is reasonable. And given the fact that they harmonized the two statutory provisions, that they gave meaning to the language of the two statutory provisions, and it's consistent with congressional intent, the Board's decision is entitled to deference, and the Court should deny the petition for review. Thank you, counsel. Mr. Burr, David has some quite a bit of rebuttal time remaining. If I can answer Your Honor's questions about the jurisdiction. In fact, 8 CFR 208.4 does outline exactly where the applications go. And 208.4B2II, I don't know how to say that properly, states clearly that after the completion of removal proceedings, jurisdiction lies with the immigration court to adjudicate any further asylum applications. And it specifically states that a motion to reopen shall be the asylum application shall be submitted in conjunction with a motion to reopen where applicable. Again, indicating that the Department of Justice and Congress have considered that there are instances where a motion to reopen is not applicable. And the government, we concede absolutely that if a motion to reopen were required under the motion to reopen exceptions, Mrs. Chen does not meet one of the exceptions. However, the government has not pointed to a single statute, a single regulation, and a single Federal Circuit case that indicates with exception, obviously, the Seventh Circuit disagreeing with the exception that indicates a motion to reopen. Disagreeing with what other circuit? Disagreeing with our position. Oh, I was going to say, the way you said that, it sounded as if there were a bunch of cases supporting you. But as far as – is there another case besides the Seventh Circuit case that's precisely on this question? I believe that there is dicta that both in this Court and in the Second Circuit, which says that the statute seems to consider. I believe it's Huang v. INS that says that. The answer to my question is no. There's no other holding other than that of the Seventh Circuit that's precisely on this question. Yes, Your Honor. That is my understanding. There is no precise – not precisely on this point. And if I could just address, I think, what is probably the elephant in the room, which is a legitimate concern of the government of abuse, that essentially this can be considered an end around the motion to reopen requirements. And, in fact, I think the system is set up – if you read the statute, it's set up quite beautifully to actually prevent for abuse. First, you have the fact that this is – these are going to be individuals with final orders of removal. If they have their asylum application adjudicated, the statute not only gives the government authority but actually requires detention. So, essentially, these individuals seeking to have their successive asylum applications adjudicated will be turning themselves in. If, as the government seeks to portray it, they are fugitives from justice, well, now anybody who has legitimate fear will be trading off the right for a hearing to surrendering themselves. They will be detained during the process while the case is being decided and then removed if they are unsuccessful. For the few individuals that are successful, that meet their burden, then they will certainly be released from detention and protected under the laws of the United States. Secondly, there's – you can kind of draw an analogous situation of individuals who are removed from the United States and then return, the reinstatement provisions. Again, the reinstatement provisions provide for an opportunity for an individual to present their fear. It's called a credible fear interview – or, I'm sorry, a reasonable fear interview before the government can reinstate an old order of removal. So if Mrs. Chen, say, departed the United States and returned the very next day, she would actually get a hearing before an immigration judge on her fear. But now the government – this is Congress clearly indicating that there are instances where an individual should not be returned to persecution, that this is the United States' obligation under domestic and international law. And so Mrs. Chen, staying in the United States, should have the same opportunity to present her claim. If she's unsuccessful, she will be in the custody of the United States government. They will be able to effectuate removal. So the statute creates a system to prevent abuse and, in fact, benefit the government in the sense that many individuals who are so-called fugitives from justice will have to turn themselves in in order to seek this relief. Unless the Court has any further questions, rest on our brief. Thank you, Counsel. We appreciate the arguments of both parties, and the case just argued is submitted. The next case docket is United States v. Carr. And Counsel may begin whenever they have settled in.
judges: Canby, Graber, Gould